*Brinkerhoff, J.
This is a writ of error brought to re- [289'' verse the judgment of the probate court of Belmont county. A complaint was duly made before a justice of the peace of the-county, by affidavit, against the plaintiff in error, for a violation of the act of May 1, 1854, “ to provide against the evils resulting from the sale of intoxicating liquors in the State of Ohio.” , Thereupon a warrant was issued, under which the plaintiff in error was arrested and brought before the justice. Process of subpena was-issued for witnesses on both sides, and oh their being brought in witnesses were on both sides sworn, examined, and cross-examined; and thereupon the said Scovern was ordered by the justice to enter-into recognizance in the sum of one hundred dollars for his appearance before the probate court on the first day of the next term thereof, which was done accordingly. All which appears from the transcript of the docket entries in the case by the justice of the peace filed, together with the recognizance in the probate court, and copied into its record of the case. But there is no entry in the docket of the justice expressly declaring that he found the-complaint to be true.
On this transcript and recognizance an information was filed by the prosecuting attorney, trial had at the June term, 1855, a verdict of guilty rendered, and judgment entered thereon.
It is now alleged for error :
1. That the transcript of the docket entries of the case by the-justice of the peace does not expressly show that he found “ the complaint to be true.”
The eleventh section of said act (Swan’s Rev. Stat. 898), and which prescribes the mode of proceeding in the examining court,, is as follows:
*290, 291 11 Sec. 11. That all prosecutions under this act shall bo in the '290] name of the State of Ohio, and shall be commenced *upon a written complaint under oath or affirmation before any justice of the |)oace of the cpunty in which said offense was committed, or mayor of any incorporated town, village, or city, or by information or indictment, as may be provided by law for the prosecution of offenses, the punishment of which is not capital or imprisonment in the penitentiary; and upon the filing of such complaint with such justice of the peace or mayor as aforesaid, such justice ■of the peace or mayor shall forthwith issue a warrant directed to the proper officer, for the arrest of the person or persons charged with a violation of the provisions of this act, and such officer shall forthwith arrest the person or persons named in said warrant, and bring him or them before the justice of the peace or mayor issuing •said warrant; and upon the return of said warrant served, such justice of the peace or mayor shall proceed to inquire into the truth of ¡such complaint, unless for good cause shown a continuance is granted at the instance of either party, and in case of the continuance of •said action as aforesaid, the defendant or defendants shall enter into a recognizance to the'State of Ohio in such sum as the justice of the peace or mayor may deem reasonable, with security to the acceptance of such justice or mayor, conditioned for the appear.ance of said defendant or defendants at the time fixed for the hearing of said complaint, and in default of such defendant or defendants giving such recognizance as aforesaid, the defendant or defendants shall be committed to the jail of the county to be safely kept until the time fixed for the hearing of said complaint; and if the parties so recognized shall not appear at the time set for ■said trial, the recognizance so given by him or them shall be forfeited by such justice of the peace or mayor, and such officer shall enter such forfeiture upon said recognizance and also upon his docket, and thereupon such justice or mayor shall forthwith pro-291] ceed to collect *the penalty of said recognizance by instituting an action thereon, and proceeding with the same to final judgment; and when the same is collected, after paying the costs of .such collection, such justice or mayor shall pay over the balance to the township, city, or incorporated village treasury, for the support of common schools; and in all- cases of prosecution before justices of the peace or mayors, if such officer finds the complaint to be *292 true, he shall recognize such defendant or defendants to' answer said charge as in other criminal prosecutions of like grades,” etc.
Now, on examination of this section of the statute, it will be seen that it expressly requires one entry — and one only — to be made on the docket of the justice; and that is an entry of the forfeiture of the recognizance of the accused in case of his failure to appear at the time to which the preliminary examination is continued ; and we think the maxim, “ expressio unius est exclusio alterius,” is fairly and forcibly applicable.
The act of March 27, 1837 (Swan’s Rev. Stat. 533), “.defining the powers and duties of justices of the peace and constables in criminal cases,” in its first section provides that every justice of the peace “ is authorized and required, on view, or complaint made on oath or affirmation, to cause every person charged with the commission of a crime, or a breach of the law, to be arrested and brought before himself, or some other justice of the peace of the same county, except as hereinafter excepted. Fourth. It shall be the duty of the justice of the peace, before whom any such person shall be brought, to inquire into the complaint; and every such person either to commit to the jail of the county, or discharge, or recognize to be and appear before the court,- on' the first day of the next term thereof, as the nature of the case may require.”
^Neither under this statute, nor under similar statutes which [292 were superseded by it, has it ever been held that the justice must enter on his docket an express finding that the complaint was true, that there was good, or probable, or reasonable cause for the detention of the accused, or that “the nature of the case required ” such detention; and it had, long prior to the enactment of the “ liquor law,” been the established and unquestioned practice to omit any such entry. And we can perceive no reason that can bo urged in favor of the necessity of such entry in the one case which will not apply with equal force in the other. In the one case he is to commit or recognize the accused party, “ if he find the complaint to be true ;” in the other, if he find that “ the nature of the case requires it.”
It is said the preliminary examination and finding of the justice of the peace is a substitute, for the finding of an indictment by a grand jury, and without which the jurisdiction of the probate court can not attach. Yery true; but it is a like substitute in pi-osecutions for assault and battery, and other minor offenses, under the act of *293 1837, as well as under the “ liquor law ” of 1854. Both may be-prosecuted on the information of the prosecuting attorney, based on the transcript of the justice’s docket in the case, without indictment, and tried in the probate court. And if there must be an express docket entry of the finding in the one case, why not in the other ?
"We are satisfied that the difference in the clauses of the statutes to which we have adverted is but a casual difference of phraseology; the intent of hoth clauses being substantially the same. Both are intended to direct and inform the mind, and control the conscience of the examining officer; but the legislature, we think, never intended to make an entry of his finding from the testimony neces21)3] sary to the validity of the subsequent proceedings. If it *had so intended, it would have directed such entry in express terms, as-it has in express terms directed the entry of the forfeiture of the recognizance.
And finally on this point, we think it fairly presumable from what does appear in the transcript, that the justice did, as a matter of fact, find the complaint to be true. A complaint in writing and under oath was duly made, and was before him. A warrant issued, and the accused was arrested and brought into court. Witnesses were subpenaed, appeared, and were sworn and examined. All this was a senseless proceeding, unless it was for the purpose of ascertaining whether the complaint was true. And when he thereupon required the accused to enter into a recognizance for his appearance in the probate court for final trial, the reasonable, as well as legal, presumption is that he found the complaint to be trlie. He could not rightfully make such requirement without such finding; and in the review on error of the proceedings of inferior tribunals acting within their proper jurisdiction, “everything is presumed to be rightly and duly performed, until the contrary is shown.” Broom’s Legal Maxims, 729. And “ acts done which presuppose the existence of other acts, to make them legally operative, are presumptive proofs of the latter.” Ward’s Lessee v. Barrow, 2 Ohio St. 246, 247; Lessee of Coombs and Ewing v. Lane, 4 Ohio St. 148.
These principles are, we think, applied with peculiar propriety in the review of proceedings before justices of the peace. They are a class of officers in the main respectable for their general intelligence, good sense, and uprightness of motive, hut who never can be expected to have had the advantages of a legal training; and whose *294, 295 proceedings therefore, while conducted in general with a conscientious regard to the requirements of law in matters of substance, are always very liable to be deficient in matters *of form. And [294 it would result in consequences highly mischievous, would defeat obvious legislative policy and intent, and practically nullify most salutary laws, were we to permit ourselves to exercise undue astuteness in the scrutiny of their proceedings.
2. It is further assigned for error, and appears in a bill of exceptions embodied in the record, that on the final trial in the probate court, the prosecuting attorney asked a witness to “ state whether or .not it v?as a matter of public notoriety in the town of St. Clairsville that said Creigh was in the habit of getting intoxicated?”— the said Creigh being the person to whom liquor was alleged in the information to have been sold.
3. And, finally, it is assigned for error that, on the trial, the prosecuting attorney asked one Wright (who was a witness on the stand, and was also a minor, to whom liquor was, in the information, alleged to have been sold), “whether a third person had procured him ale to drink from the defendant?”
Both these questions were objected to, the objections overruled, and answers admitted; but what those answers, or either of them were, and whether favorable or unfavorable to the plaintiff in error, does not appear, because neither the answers nor the effect or tendency of them are stated in the bill of exceptions. Therefore, however erroneous these rulings of the court below may have been, it is impossible to say whether the answer to either question prejudiced or benefited the accused. It may have been such as to have either or neither effect.
Now the rule seems to be settled in Ohio, that in order to justify the reversal of a judgment on error, the record must affirmatively show, not only that error intervened but that it was to the prejudice of the party seeking to take advantage of it. Reynolds v. Executors of Rogers, *5 Ohio, 171, 172; May v. The State, 14 [295 Ohio, 467, 468. We are of opinion, therefore, that there is no such error in the proceedings of the court below as to justify the reversal of its judgment.

Judgment affirmed.

Swan, Bowen, and Scott, JJ., concurred.
Bartley, C. J., dissented.